**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANCISCO ROCHA URIBE,<br><br><br>*Defendant.* | CASE NO. 3:21-cr-2-4<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Defendant Francisco Rocha Uribe asks this Court to review the detention order issued by Magistrate Judge Joel C. Hoppe on February 10, 2021. *See* Dkts. 59, 66. Through counsel, Defendant asks to be released, pending his trial, on any conditions this Court deems appropriate. For the reasons discussed below, the Court finds that detention is proper and that the 18 U.S.C. § 3142(g) factors weigh in favor of detention. Accordingly, the Court will deny Defendant's motion for revocation of the detention order.

## I.      FACTUAL BACKGROUND

In 2016, local drug task forces, in the Waynesboro, Virginia region, first identified Defendant as a potential large-scale methamphetamine dealer. Law enforcement arranged three separate controlled purchases of methamphetamine from the Defendant, totaling 6.12 ounces (173.5 grams). After law enforcement confronted Defendant about the controlled purchases, he agreed to cooperate. As a result, Defendant was not charged with the 2016 controlled purchases.

In late August 2020, law enforcement learned that Defendant was, again, distributing methamphetamine. The Waynesboro Police Department and the Department of Homeland Security executed a search warrant at Defendant's residence, finding approximately two ounces

1

of methamphetamine. Following the search, Defendant again agreed to cooperate with law enforcement.

Defendant told agents that he had two sources of supply in Harrisonburg and Charlottesville. He also admitted that in the three months before the August 2020 search, he purchased methamphetamine in half-pound (226.8 grams) quantities from his suppliers on at least four separate occasions. Defendant would resell the drugs in 1/4 or 1/8 ounce quantities. Cooperating individuals corroborated Defendant's admissions. In exchange for further assistance, law enforcement again chose not to arrest Defendant.

Approximately one month later, in October, law enforcement learned that Defendant lent money to known drug traffickers—allowing those dealers to purchase methamphetamine. In December, law enforcement discovered that Defendant continued to distribute methamphetamine. Consequently, law enforcement executed a search warrant at Defendant's house. Officers found one gram of methamphetamine, used syringes, and a glass smoking device. Defendant then told law enforcement that he had resumed selling drugs around the end of October. He admitted to purchasing at least two pounds (907.2 grams) of methamphetamine in November and selling one and a half pounds (680.4 grams) of it before officers conducted the December search.

In January 2021, a grand jury charged Defendant with one count of conspiracy to distribute and possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Dkt. 22.

At the detention hearing, the Magistrate Judge found that no condition or set of conditions would reasonably assure the safety of the community if Defendant was released. Dkt. 59. Defendant now asks the Court to revoke the detention order, Dkt. 66, which the Government opposes, Dkt. 68.

## II.    LEGAL STANDARD

A trial court reviews a magistrate judge's decision on detention *de novo*, and may revoke an order of pretrial detention under 18 U.S.C. §3145. *See United States v. Putillion*, No. 2:18-cr-00186, 2018 WL 5784066, *2 (S.D.W. Va. Nov. 5, 2018) (citing *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990)); *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). Where there is probable cause to believe that the defendant committed a drug-trafficking offense under 21 U.S.C. § 841, there is a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). That "presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (internal quotations and citation omitted).

In resolving an appeal of an order of detention, the Court must consider the factors identified by the Bail Reform Act, 18 U.S.C. § 3142(g): "(1) the nature and circumstances of the offense charged . . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . .; [and] (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Should the Court determine that the defendant is a flight risk or danger to the community, based on the § 3142(g) factors, the Court may then detain a defendant without bail.

## III.   DISCUSSION

Defendant is charged with one count of conspiracy to distribute and possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Dkt. 22. Such an offense is subject to the rebuttable presumption that Defendant should be detained; a fact not disputed by the parties. *See* 18 U.S.C. § 3142(e)(3). The Government is not contending that he is a flight risk. Thus, the only issue before the Court is whether Defendant has put forward enough evidence to rebut the presumption that there are no conditions which would reasonably assure the safety of the community.

Defendant argues that the § 3142(g) factors show that he can be safely released—primarily because he has no criminal history or history of violence. Defendant also contends that detention is unwarranted because he has strong ties to the community, is gainfully employed, and cares for his two young daughters. Should he be released pending trial, Defendant has agreed to move in with his parents, who also live in Waynesboro and who are currently looking after his daughters.

The Court first considers the "nature and circumstances of the offense" in question, including whether the offense involves "a controlled substance." § 3142(g)(1). Defendant was charged with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), a serious offense involving a Schedule I controlled substance. *See United States v. Caro*, 597 F.3d 608, 624 (4th Cir.2010) ("[I]llegal drugs have long and justifiably been associated with violence."). The seriousness of this charge is further evidenced by the fact that, if convicted, Defendant faces a minimum term of imprisonment of at least ten years. The circumstances surrounding the offense are also troubling. Evidence shows that Defendant distributed large amounts of methamphetamine on at least two different occasions. And after promising his full cooperation with law enforcement, Defendant continued to distribute methamphetamine, buy methamphetamine,  and lend money to known drug traffickers. Thus, the Court finds that this factor weighs in favor of detention.

"The weight of the evidence against the [Defendant]" is the next factor the Court considers. § 3142(g)(2). Here, the weight of the evidence against the Defendant is strong. First, in 2016, law enforcement arranged three separate controlled purchases of methamphetamine from the Defendant, totaling 6.12 ounces (173.5 grams). Then, in 2020, law enforcement executed two search warrants at Defendant's residence, one in August and one in December. Both searches found methamphetamine at the residence. Following the August search, Defendant admitted to law enforcement that in the three months before the search, he had purchased methamphetamine in half-pound (226.8 grams) quantities on at least four separate occasions. He told officers that he would resell the drugs in 1/4 or 1/8 ounce quantities. Other cooperating individuals corroborated Defendant's statements.  After the December search, Defendant admitted that he had purchased at least two pounds (907.2 grams) of methamphetamine in November and sold one and a half pounds (680.4 grams) of the drugs prior to the December search. Thus, the weight of the evidence against the Defendant is strong and weighs in favor of detention.

Next, the Court takes into account the "history and characteristics" of the Defendant. § 3142(g)(3).[1] Defendant is a divorced 29-year-old Mexican national with a Mexican passport. He has not traveled outside the United States since entering the country in 1999. Defendant is divorced with two children, a 7-year-old and a 9-year-old. Both children reside with Defendant but are currently staying with Defendant's parents. Defendant's parents live in a two-bedroom townhome where a total of seven individuals reside. Defendant dropped out of school after the ninth grade,

---

[1] A defendant's history and characteristics includes such factors as the "person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." § 3142(g)(3)(A).

but has remained gainfully employed by his stepfather's landscaping/snow removal business since 2011.

Although Defendant does not have a significant criminal history, during the last five years, he has been significantly involved in drug distribution. In addition to buying and selling large quantities of methamphetamine, Defendant has repeatedly shown a disregard for the law. Defendant agreed to cooperate with law enforcement multiple times. Yet, Defendant broke each promise and continued to buy and sell methamphetamine in an unauthorized manner. It is not enough to cooperate with law enforcement if that cooperation and trust is broken. Thus, Defendant's history and characteristics also weigh in favor of detention.

The final factor the Court looks at is the "nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." § 3142(g)(4). Law enforcement purchased methamphetamine from Defendant during three controlled buys in 2016, but, in exchange for his cooperation, law enforcement did not pursue charges. Then, in August 2020, law enforcement found that Defendant continued to purchase and distribute significant amounts of methamphetamine. But law enforcement did not bring charges because Defendant, *again*, agreed to cooperate. Soon thereafter, officers discovered that Defendant was back to distributing drugs and that he was also lending money to other dealers—permitting those traffickers to purchase more methamphetamine. In addition, there is evidence that Defendant sold firearms to other drug traffickers. Defendant's course of behavior, specifically his duplicitous conduct toward law enforcement, is concerning. If he is let out, evidence would indicate that there is a high probability that he would, in some way, involve himself in the distribution of methamphetamine and be a danger to the public. Thus, the final factor weighs in favor of detention.

Defendant has not rebutted the presumption of detainment against him and each of the §

3142(g) factors weigh against his release. Accordingly, the Court finds that there is no condition

or set of conditions that will reasonably assure the safety of the community.


## IV.  CONCLUSION

For these reasons, the Court will deny Defendant's Motion for Revocation of Detention

Order. Dkt. 66. An appropriate Order will issue.

The Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion and

the accompanying Order to the parties.


ENTERED this _25th__ day of March, 2021.

_____

NORMAN K. MOON

SENIOR UNITED STATES DISTRICT JUDGE